STATE v. WILLIAM MASON WELLMON.

(Filed 4 November, 1942.)

1. **Criminal Law §§ 81a, 81b—**

In an appeal from a conviction of a capital offense, the Supreme Court, of its own motion, will examine the record for error committed at the trial, both those where no exception was taken as well as those appearing on the face of the record.

2. **Criminal Law § 44—**

The granting or refusing a continuance, even in a capital case, is a matter in the sound discretion of the trial judge and is not reviewable in the absence of manifest abuse; holding that there was no abuse of discretion, where the grounds for the continuance were that witnesses beyond the State would testify to an alibi, it appearing that such witnesses were examined in a *habeas corpus* proceeding and their testimony admitted on the trial by consent of the solicitor.

3. **Criminal Law §§ 41d, 41e—**

The credit of a witness may be impeached by proof that he has made representations inconsistent with his present testimony, and whenever these representations respect the subject matter in regard to which he is examined, it is not necessary to inquire of the witness, before offering the disparaging testimony, whether he has or has not made such representations.

APPEAL by defendant from *Pless, J.*, at August Term, 1942, of IREDELL.

The defendant was tried and convicted upon a bill of indictment found at the August Term, 1941, of Iredell County, charging him with rape on 11 February, 1941. The defendant was extradited from the District of Columbia and brought to the common jail of Mecklenburg County on 4 August, 1942, and upon it being made to appear to the court that defendant was without counsel, the court, on 5 August, 1942, assigned him counsel, and on 9 August, 1942, defendant employed counsel, and was placed on trial on 11 August, 1942. Both counsel assigned and privately employed conducted the defense.

From a judgment of death, predicated upon a jury verdict of guilty of the felony of rape as charged in the bill of indictment, the defendant appealed, assigning errors.

*Attorney-General McMullan and Assistant Attorneys-General Patton and Rhodes for the State.*

*Hosea V. Price for defendant, appellant.*

SCHENCK, J. The defendant sets out in his brief but two groups of exceptive assignments of error. We discuss them in the order so set out.

STATE *v.* WELLMON.

The first group of assignments relate to the refusal of the court to grant the defendant's motion for a continuance, and cannot be sustained.

While there is no exception noted in the record to the court's refusal to grant the motion for a continuance, which would ordinarily preclude any consideration thereof by us, still, since the defendant has been convicted of a capital offense, his contentions as to errors committed at the trial will be reviewed, as well also as the record for errors appearing on its face. *S. v. Brown,* 218 N. C., 415, 11 S. E. (2d), 321.

Our decisions are to the effect that the granting or the denial of a motion for a continuance is a matter within the sound discretion of the trial judge and not the basis for valid exception, unless there has been manifest abuse. It is virtually necessary that this discretion be so vested in the trial judge, else it would be in the power of a defendant to postpone a conviction indefinitely by making affidavits with the requisite matter on the face of them. *S. v. Riley,* 188 N. C., 72, 123 S. E., 303; *S. v. Sauls,* 190 N. C., 810, 130 S. E., 848; *S. v. Whitfield,* 206 N. C., 696, 175 S. E., 93, and cases there cited.

We cannot hold that in denying the motion of the defendant for a continuance the court abused the discretion in it vested. The defendant had been arrested in the District of Columbia upon the charge in the bill of indictment approximately a year before he was finally brought to trial in Iredell County; he sought release in the district by a writ of *habeas corpus* and had resisted extradition for practically a year; he was finally brought to North Carolina on 4 August, 1942, and being without counsel was assigned counsel on 5 August, 1942, and employed counsel on 9 August, 1942, and was put on trial 11 August, 1942, in which trial he was represented by both counsel. His defense was an alibi and the ground urged for a continuance was that there were witnesses in the District of Columbia by whom he could prove that he was in the District at the time the offense with which he was charged was alleged to have been committed.

It was made to appear to the court that the witnesses desired by the defendant had testified in the *habeas corpus* proceeding in the District of Columbia, where the defendant sought to prove he was elsewhere at the time it was alleged the crime was committed, as to the defendant's whereabouts at that time, and that their testimony had been reduced to writing, and that the solicitor for the State agreed that the transcript of this testimony might be introduced in evidence, without objection, as the depositions of such witnesses. Under these circumstances, especially in view of the fact that the witnesses were beyond the boundaries of the State and not subject to the jurisdiction of its courts, we cannot hold that there was a denial of due process of law by a manifest abuse of the discretion vested in the trial judge by ruling the defendant to trial. "It

is now a familiar axiom that granting or refusing the continuance of a cause is a matter which rests in the discretion of the trial court and in the absence of gross abuse is not subject to review on appeal." *S. v. Rhodes,* 202 N. C., 101, 161 S. E., 722. "We do not interfere unless the discretion is abused." *Hensley v. Furniture Co.,* 164 N. C., 148, 80 S. E., 154.

The second group of assignments of error relate to the admission of evidence to the effect that a witness for the defendant, one John Mitchell, whose testimony in the *habeas corpus* proceeding in the District of Columbia. was introduced by the defendant as the witness' deposition, had made statements contrary to the statements made by him in the *habeas corpus* proceeding. The witness Mitchell's testimony by way of deposition was to the effect that he worked with the defendant at Fort Belvoir, Virginia, and that the defendant was at Fort Belvoir on Tuesday, 11 February, 1941, the date the crime is alleged to have been committed by the defendant in Iredell County, North Carolina. And when asked on cross-examination: "Did you not tell Sergeant Carver that you had not seen Wellmon since December?" answered: "No, Sir, I did not." The State called the witnesses J. C. Carver, policeman of Washington, and J. W. Moore, sheriff of Iredell County, who each testified in effect, that the witness John Mitchell said in their presence in Washington before the defendant was extradited that he had not seen the defendant since December (1939) and January (1941), respectively.

These assignments of error are untenable. In the first place, they do not fall within the contention made by the defendant that the impeached witness must have been asked as to his statements under consideration, in order that he may have had an opportunity to explain them, before the impeaching witness can testify to inconsistent statements, *S. v. Wright,* 75 N. C., 439, for the reason that the record divulges that the witness was asked if he did not make the inconsistent statement to Sergeant Carver and he answered: "No, Sir, I did not."

The rule in this jurisdiction was enunciated by *Gaston, J.,* in *S. v. Patterson,* 24 N. C., 346, as follows: "It is well settled that the credit of a witness may be impeached by proof that he has made representations inconsistent with his present testimony, and whenever these representations respect the subject matter in regard to which he is examined, it never has been usual with us to inquire of the witness, before offering the disparaging testimony, whether he has or has not made such representations. But with respect to the collateral parts of the witness' evidence, drawn out by cross-examination, the practice has been to regard the answers of the witness as conclusive, . . ." The testimony of the impeaching witnesses assailed by the assignments of error respected the main subject matter in regard to which such witnesses were examined, namely, the whereabouts of the defendant at the time the offense is

alleged to have been committed.  This testimony went to the very heart of the case, since the defendant's defense was that of an alibi, and could, in no view of the case, be construed to be only collateral.

The prosecutrix testified unequivocally that she was ravished by the defendant at her home two miles east of Statesville in Iredell County, North Carolina, shortly after 1:30 o'clock p.m., on 11 February, 1941, and her testimony was corroborated by the testimony of her neighbor, who testified that she saw the defendant about 2 o'clock in the afternoon of 11 February, 1941, in about 500 feet of the home of the prosecutrix, traveling in the direction thereof.  The prosecutrix, as well as her neighbor, subsequently identified the defendant in the District of Columbia jail where he was first held, and at the trial of this case.

The defendant's testimony was to the effect that he did not ravish the prosecutrix and that he was not in Iredell County, North Carolina, but was living in Washington and working at Fort Belvoir, Virginia, on 11 February, 1941, and his testimony was corroborated by the testimony of his co-worker at Fort Belvoir, who testified that he rode in the same automobile with defendant from Washington to Fort Belvoir on the day the offense is alleged to have been committed, 11 February, 1941; and the social security record of the Chas. H. Thompson Company for its employees at Fort Belvoir was identified by an auditor of the company who testified that the record showed that the defendant worked from 7:30 a.m. to 4:00 p.m. on 11 February, 1941; and a labor foreman of the Thompson Company testified positively that the defendant worked under his direction at Fort Belvoir, Virginia, the 11 February, 1941; and the man in whose automobile the defendant rode from Washington to Fort Belvoir testified that the defendant rode with him on Tuesday, 11 February, 1941, and paid him on that day for his weekly transportation.

The evidence of the State and the evidence of the defendant as to the whereabouts of the defendant on 11 February, 1941, the date the offense is alleged to have been committed, is in direct conflict—the former being positively to the effect that he was near Statesville in Iredell County and the latter being positively to the effect that he was at Fort Belvoir in Virginia on the date in question.

The jury heard the witnesses, observed their demeanor on the stand, and under a charge presumably free from error (it not appearing in the record), returned a verdict of guilty of the felony as charged in the bill of indictment.  Since the exceptive assignments of error set out in the appellant's brief cannot be sustained, and since we find no error on the face of the record, we must, notwithstanding the gravity of our action, affirm the judgment of death pronounced by the Superior Court.

The defendant has his right to apply to the pardoning power.

Upon the record, we find

No error.