GLADYS L. BOST, ADMINISTRATRIX OF THE ESTATE OF WADE LEE BOST; AND
GLADYS L. BOST, INDIVIDUALLY v. WILLIAM J. RILEY, B. L. RABOLD,
LOUIS HAMMAN, AND CATAWBA MEMORIAL HOSPITAL, INC.

No. 7925SC256

(Filed 5 February 1980)

1. **Physicians, Surgeons and Allied Professions § 15— malpractice action—surgeon's opinion of hospital care—exclusion improper**
     The trial court in a medical malpractice action erred in excluding
     testimony by intestate's father concerning a conversation he had with a
     surgeon who treated intestate at a hospital to which intestate was transferred
     after one month of treatment by defendants, since the excluded testimony was
     that the surgeon, in commenting upon intestate's condition, stated that "inferior hospitals . . . would hold patients . . . too long sometimes and then they
     would send them to him and expect miracles"; the surgeon testified at trial
     that all of the treatment which intestate received at defendant hospital and
     under the care of defendant physicians was in keeping with accepted medical
     practices; the excluded testimony was in direct conflict with the surgeon's trial
     testimony; and the statements of the surgeon concerning quality of care of-

Bost v. Riley

fered at defendant hospital were pertinent and material to whether all or any of defendant physicians were negligent.

2. **Witnesses § 6.1— inconsistent statements—admissibility for impeachment—opportunity to deny or explain—when required**

Where inconsistent statements of a witness relate to a matter which is pertinent and material to the pending inquiry, or which respects the subject matter in regard to which he is examined, the inconsistent statements may be proved by other witnesses without first bringing them to the attention of the main witness; therefore, because statements which a surgeon allegedly made to intestate's father concerning the quality of care offered at defendant hospital were pertinent and material to whether all or any of defendant physicians were negligent, plaintiff was not required to afford the surgeon an opportunity to deny or explain these statements prior to impeaching him through the testimony of another witness.

3. **Hospitals § 3— corporate negligence—insufficiency of evidence**

In N. C. a hospital may be found liable to a patient under the doctrine of corporate negligence, but the trial court in this case properly directed verdict for defendant hospital where plaintiff made no showing that the hospital's failure to take action when physicians did not keep progress notes on plaintiff's intestate's condition contributed to intestate's death; hearsay testimony concerning the opinion of a surgeon at another hospital that defendant hospital was inferior could not be considered substantive evidence of the quality of care administered by defendant hospital; and there was no evidence at trial that defendant hospital failed to use reasonable care in selecting the defendant surgeons to practice at the hospital.

APPEAL by plaintiff from *Walker, Judge.* Judgment entered 7 June 1978 in Superior Court, CATAWBA County. Heard in the Court of Appeals 13 November 1979.

Plaintiff's intestate, Wade Lee Bost (Lee), was involved in a bicycle accident on 23 July 1974 in which he injured the left side of his body. On 25 July 1974 Lee was seen in the emergency room of defendant Catawba Memorial Hospital, Inc. (Catawba) and was admitted to Catawba under the supervision of defendant Dr. William J. Riley. Riley conducted tests and diagnosed Lee's injury as a delayed rupture of the spleen. Riley, a surgeon, performed a splenectomy on Lee and replaced blood lost as a result of the rupture. Following the operation, Lee was placed in the intensive care unit, fed intravenously and given various medications. Defendant Riley went on vacation from 29 July 1974 through 11 August 1974, leaving Lee in the care of his two partners, defendant Drs. Bernard L. Rabold and Louis Hamman.

Lee's progress improved from the time of the operation until the late evening of 29 July 1974, when he began experiencing abdominal pain, increased intraperitoneal fluid, perspiration, decreased blood pressure, rapid breathing and vomiting. Defendants Rabold and Hamman diagnosed Lee's condition as peritonitis, an infection of the peritoneal cavity. The doctors placed Lee on the antibiotic Geopen. Between 3 August 1974 and 4 August 1974 Lee's vital signs improved somewhat and the doctors, sensing an improved condition, removed Lee from the intensive care unit.

On 5 August 1974, Lee's condition took a sudden turn for the worse. His temperature shot up to 104°, his blood pressure dropped substantially, his skin became pale and his abdomen showed a marked increase in distention and tenderness. Defendants Rabold and Hamman operated on Lee on 6 August 1974 and found a volvulus, a twisting of the intestine which blocked the passage of its contents and the blood supply. The doctors resected approximately three feet of gangrenous bowel. Postoperatively, Lee recovered poorly, developing a fecal fistula, malnutrition and septicemia, and was treated with antibotics, steroids, hyperalimentation and transfusions.

On 23 August 1974 Lee was transferred to Baptist Hospital in Winston-Salem, his condition critical, under the care of Dr. Richard T. Myers. Three additional operations were performed on Lee, but his condition continued to deteriorate. On 27 January 1975 Lee died of liver failure induced by sepsis.

Plaintiff administratrix of Lee's estate sued defendants Riley, Rabold, Hamman and Catawba for malpractice. In the complaint it was alleged the defendant surgeons were negligent, *inter alia,* in failing to take adequate preoperative blood studies prior to the operation of 25 July 1974, damaging organs in the area of this operation, failing to diagnose and adequately treat Lee's intestinal infection, failing to adequately monitor Lee's progress, failing to provide Baptist Hospital with adequate information of Lee's condition, failing to keep plaintiff informed about Lee's true condition, removing an excess quantity of Lee's bowel, and failing to adequately treat Lee's condition both prior and subsequent to the operation performed on 6 August 1974. Plaintiff charged Catawba with negligence in the selection of the defendant surgeons to practice surgery in that hospital and allowing the

surgeons to perform such surgery, in failing to adequately supervise and monitor the activities of the defendants, and in failing to adequately monitor the condition of Lee or require the defendant surgeons to keep better progress notes on Lee's condition.

At trial, plaintiff called as adverse witnesses the defendant surgeons and other personnel of Catawba, as well as two radiologists and Dr. Richard T. Myers, the surgeon who treated Lee at Baptist Hospital. Plaintiff also called Dr. Stanley R. Mandel, a surgeon practicing at North Carolina Memorial Hospital at Chapel Hill, who had reviewed Lee's medical records. At the close of plaintiff's evidence, all of the defendants moved for a directed verdict. The trial court granted only the motion of defendant Catawba. The defendant surgeons offered no evidence, but renewed their motions for a directed verdict, which were all again denied by the court. The jury answered the issue of negligence in favor of the defendant surgeons. From the judgment of the court entered upon the jury's verdict, plaintiff appeals.

*Gaither and Gorham, by James M. Gaither, Jr. and J. Samuel Gorham III, for plaintiff appellant.*

*Mitchell, Teele, Blackwell & Mitchell, by W. Harold Mitchell, for defendant appellees.*

WELLS, Judge.

Plaintiff alleges error by the trial court in the admission and exclusion of evidence, the making of prejudicial remarks before the jury, granting defendant Catawba's motion for a directed verdict, charging the jury, and failing to grant plaintiff's motion for a new trial.

[1] Plaintiff assigns as error the trial court's exclusion of testimony of Ed Bost, Lee's father, of the conversation which Mr. Bost allegedly had with Dr. Richard T. Myers after Dr. Myers had performed his first operation on Lee at Baptist Hospital. Bost testified *in camera* that Dr. Myers had told him that Lee, at that point in time, was just a "mass of infection." Bost said that Dr. Myers commented, "[I]nferior hospitals . . . [w]ould hold patients . . . too long sometimes and then they would send them to him and expect miracles." Bost stated that he believed Dr. Myers was

categorizing defendant Catawba Memorial Hospital as one such "inferior hospital." The trial court excluded this testimony. Plaintiff's position is that this comment was admissible for impeachment purposes as a prior inconsistent statement of Dr. Myers. Under our rules of evidence, prior inconsistent statements of a physician are admissible to impeach his testimony. *Ballance v. Wentz*, 286 N.C. 294, 210 S.E. 2d 390 (1974). Dr. Myers, though called by plaintiff, was an adverse and hostile witness, and was therefore subject to impeachment by plaintiff. G.S. 1A-1, Rule 43(b). *See also, State v. Anderson*, 283 N.C. 218, 195 S.E. 2d 561 (1973).

Defendants maintain that since Dr. Myers did not testify whether or not Lee should have been transferred to Baptist Hospital prior to 23 August 1974, this statement was not inconsistent or contradictory to his testimony. We do not agree. Dr. Myers was called by plaintiff as a hostile witness, and testified on cross-examination that the splenectomy was performed well, that defendants' treatment of Lee for acute gastric dilatation was by a good, medically accepted process, and that defendant Rabold ordered the proper blood tests. Dr. Myers further stated that the medication and treatment prescribed and performed by defendants Rabold and Hamman were proper and in keeping with good medical practice, that surgery was not indicated as early as 31 July 1974, and that after the second operation at Catawba, Lee's postoperative management care was in keeping with good medical practice. Dr. Myers testified that sufficient progress notes on Lee's condition were kept at defendant Catawba after the 6 August 1974 operation. In summary, it was Dr. Myers' opinion that all of the treatment which Lee received at defendant Catawba was in keeping with accepted medical practices.

The comments which Dr. Myers allegedly made to Lee's father, however, clearly implied that Lee's treatment at Catawba had left him in such a condition as to require "miracles" to be performed at Baptist and that Lee should have been transferred to Baptist Hospital sooner. This statement stands in direct contradiction to the unfettered stamp of approval Dr. Myers gave at trial to the care Lee received at Catawba. The trial court's failure to admit this testimony was prejudicial to the plaintiff. Plaintiff called only two surgeons as witnesses who were not named defendants in the suit. The testimony of one of these witnesses, Dr.

Mandel, was sufficiently favorable to plaintiff to carry the issue of negligence to the jury. The other surgeon to testify who was not a named defendant was Dr. Myers.

Dr. Myers' credentials were impressive. At the time he treated Lee, he was Chairman of the Department of Surgery at Bowman-Gray School of Medicine. He co-authored an authoritative treatise on the surgical aspects of acute abdominal disorders entitled *The Acute Abdomen.* Dr. Myers examined Lee within a few days of his transfer from Catawba to Baptist. The excluded testimony of Mr. Bost apparently described an initial reaction by Dr. Myers to Lee's condition at the time he was transferred and to the treatment which Lee received at Catawba. Plaintiff's case was unquestionably critically damaged because the jury was prevented from hearing a patently negative statement from Dr. Myers made at the time he was treating Lee, relating to the quality of treatment Lee received at Catawba.

[2] Defendants further argue that the trial court's exclusion of this testimony was proper because plaintiff's counsel was required to lay a foundation for the questions posed to Lee's father, which plaintiff failed to do in the correct manner. We disagree. The rule in North Carolina as to whether a foundation need be laid by first confronting the witness to be impeached with the inconsistent statements is as follows: Where the inconsistent statements relate to a matter which is pertinent and material to the pending inquiry, or which respects the subject matter in regard to which he is examined, the inconsistent statements may be proved by other witnesses without first bringing them to the attention of the main witness. *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972); *State v. Wellmon,* 222 N.C. 215, 22 S.E. 2d 437 (1942); 1 Stansbury's N.C. Evidence § 48, pp. 135-140 (Brandis rev. 1973).

We believe that in the present case, the statements which Dr. Myers allegedly made to Lee's father concerning the quality of care offered at Catawba were pertinent and material to whether all or any of the defendant physicians were negligent—the issue central to this lawsuit. Accordingly, plaintiff was not required to afford Dr. Myers an opportunity to deny or explain these statements prior to impeaching him through the testimony of another witness.

Furthermore, even though plaintiff was not required to lay a foundation for her impeachment of Dr. Myers, plaintiff, in fact, did lay an adequate foundation:

> [Plaintiff's counsel]: All right, sir. And after the second operation, do you recall saying anything to Mr. Bost to the effect that . . . Lee received poor treatment at Catawba Memorial Hospital?

> [Myers]: No, I never said that.

> [Plaintiff's counsel]: Do you recall indicating or saying anything or indicating that after the second operation?

> [Myers]: No.

The record does not clearly reveal whether the conversation Ed Bost avers he had with Dr. Myers occurred after the first or second operation performed on Lee at Baptist Hospital. However, defendants do not argue on appeal that Dr. Myers may not have been confronted with the proper time at which the conversation allegedly occurred, preventing him from recalling the matter. Instead, defendants maintain that the wording of the above questions posed to Dr. Myers was insufficient to put Dr. Myers on notice about any comments he may have made to Mr. Bost concerning "inferior hospitals." We do not believe that plaintiff's counsel was required to confront Dr. Myers with the identical words Ed Bost attributes to him, as long as Dr. Myers was questioned with language meaning the same thing. Dr. Myers denied saying anything to Ed Bost to the effect that Lee received poor treatment at Catawba Hospital. Mr. Bost's testimony that Dr. Myers had made a statement to him previously to the effect that Catawba was an inferior hospital and that Lee was kept there too long, plainly related to the quality and sufficiency of treatment which Lee received at Catawba. Dr. Myers was thus afforded an adequate opportunity to explain or deny the conversation he allegedly had with Mr. Bost, and Dr. Myers flatly denied the conversation.

[3] Plaintiff also assigns as error the trial court's granting of defendant Catawba's motion for a directed verdict at the close of plaintiff's evidence. Generally, a directed verdict under G.S. 1A-1, Rule 50(a) may be granted only if the evidence is insufficient to

justify a verdict for the nonmovant as a matter of law. *Arnold v. Sharpe*, 296 N.C. 533, 251 S.E. 2d 452 (1979).

Plaintiff argues that the evidence it presented at trial was sufficient to withstand defendant Catawba's motion under both the theory of *respondeat superior* and the doctrine of corporate negligence. Catawba could be found vicariously liable under *respondeat superior* if the negligence of any of its employees, agents, or servants, acting within the scope of their authority, contributed to Lee's death. *Waynick v. Reardon*, 236 N.C. 116, 72 S.E. 2d 4 (1952). However, because plaintiff's evidence failed to show that the physicians treating Lee were acting as employees, agents, or servants of Catawba, the principle of *respondeat superior* is inapplicable to this case.

In contrast to the vicarious nature of *respondeat superior*, the doctrine of "corporate negligence" involves the violation of a duty owed *directly* by the hospital to the patient. Prior to modern times, a hospital undertook, "only to furnish room, food, facilities for operation, and attendants, and [was held] not liable for damages resulting from the negligence of a physician in the absence of evidence of agency, or other facts upon which the principle of *respondeat superior* [could have been] supplied." *Smith v. Duke University*, 219 N.C. 628, 634, 14 S.E. 2d 643, 647 (1941). In contrast, today's hospitals regulate their medical staffs to a much greater degree and play a much more active role in furnishing patients medical treatment. In abolishing the doctrine of charitable immunity, formerly available to charitable hospitals as a defense to negligence actions in North Carolina, Justice (later Chief Justice) Sharp acknowledged the changed structure of the modern hospital, quoting from *Bing v. Thunig*, 2 N.Y. 2d 656, 666, 143 N.E. 2d 3, 8, 163 N.Y.S. 2d 3, 11 (1957):

"The conception that the hospital does not undertake to treat the patient, does not undertake to act through its doctors and nurses, but undertakes instead simply to procure them to act upon their own responsibility, no longer reflects the fact. Present-day hospitals, as their manner of operation plainly demonstrates, do far more than furnish facilities for treatment. They regularly employ on a salary basis a large staff of physicians, nurses and internes, as well as administrative and manual workers, and they charge patients

for medical care and treatment, collecting for such services, if necessary, by legal action. Certainly, the person who avails himself of 'hospital facilities' expects that the hospital will attempt to cure him, not that its nurses or other employees will act on their own responsibility."

*Rabon v. Hospital,* 269 N.C. 1, 11, 152 S.E. 2d 485, 492 (1967).

There has recently been a great deal of discussion about the liability of a hospital for its corporate negligence. *See, e.g.,* Note, *The Hospital's Responsibility for its Medical Staff: Prospects for Corporate Negligence in California,* 8 Pacific L.J. 141 (1977); Comment, *Medical Malpractice — Hospital May Be Held Liable for Permitting Incompetent Physician to Operate,* 8 Rut.-Cam. L.J. 177 (1976); Payne, *Recent Developments Affecting a Hospital's Liability for Negligence of Physicians,* 18 S. Texas L.J. 367 (1977); Spero, *Vicarious and Direct Corporate Responsibility for Acts of Professional Negligence Committed in a Hospital,* 15 Trial 22 (No. 7, July 1979); Southwick, *The Hospital's New Responsibility,* 17 Clev.-Mar. L. Rev. 146 (1968); Annot., *Hospital's Liability for Negligence in Failing to Review or Supervise Treatment Given by Individual Doctor, or to Require Consultation,* 14 A.L.R. 3d 873 (1967).

The proposition that a hospital may be found liable to a patient under the doctrine of corporate negligence appears to have its genesis in the leading case of *Darling v. Hospital,* 33 Ill. 2d 326, 211 N.E. 2d 253 (1965), *cert. denied,* 383 U.S. 946, 16 L.Ed. 2d 209, 86 S.Ct. 1204 (1966). In *Darling,* the plaintiff broke his leg while playing in a college football game and was seen at the defendant hospital's emergency room by the physician on call. With the assistance of hospital personnel the physician put a plaster cast on the plaintiff's leg. The cast was put on in such a manner as to restrict the blood flow in plaintiff's leg. Plaintiff was in great pain and his toes become swollen and dark in color, and later cold. When the doctor removed the cast two days later much of plaintiff's leg tissue had died and the leg had to be amputated below the knee.

The Supreme Court of Illinois affirmed the jury's finding of negligence on the part of the hospital. The Court held that the jury could have found the hospital was negligent, *inter alia,* in failing to have a sufficient number of trained nurses attending the

plaintiff, failing to require a consultation with or examination by members of the hospital staff, and failing to review the treatment rendered to the plaintiff. Since *Darling*, the courts of other states have found that a hospital's corporate negligence extends to permitting a physician known to be incompetent to practice at the hospital. *Corleto v. Hospital*, 138 N.J. Super. 302, 350 A. 2d 534 (Super. Ct. Law Div. 1975); *Purcell v. Zimbelman*, 18 Ariz. App. 75, 500 P. 2d 335 (1972); *Hospital Authority v. Joiner*, 229 Ga. 140, 189 S.E. 2d 412 (1972).

While the doctrine of corporate negligence has never previously been either expressly adopted or rejected by the courts of our State, it has been implicitly accepted and applied in a number of decisions. The Supreme Court has intimated that a hospital may have the duty to make a reasonable inspection of equipment it uses in the treatment of patients and remedy any defects discoverable by such inspection. *Payne v. Garvey*, 264 N.C. 593, 142 S.E. 2d 159 (1965). The institution must provide equipment reasonably suited for the use intended. *Starnes v. Hospital Authority*, 28 N.C. App. 418, 221 S.E. 2d 733 (1976). The hospital has the duty not to obey instructions of a physician which are obviously negligent or dangerous. *Byrd v. Hospital*, 202 N.C. 337, 162 S.E. 738 (1932). We have suggested that a hospital could be found negligent for its failure to promulgate adequate safety rules relating to the handling, storage and administering of medications, *Habuda v. Hospital*, 3 N.C. App. 11, 164 S.E. 2d 17 (1968), or for its failure to adequately investigate the credentials of a physician selected to practice at the facility, *Robinson v. Duszynski*, 36 N.C. App. 103, 243 S.E. 2d 148 (1978).

Since all of the above duties which have been required of hospitals in North Carolina are duties which flow directly from the hospital to the patient, we acknowledge that a breach of any such duty may correctly be termed corporate negligence, and that our State recognizes this as a basis for liability apart and distinct from *respondeat superior*. If, as our Supreme Court has stated, a patient at a modern-day hospital has the reasonable expectation that the hospital will attempt to cure him, it seems axiomatic that the hospital have the duty assigned by the *Darling* Court to make a reasonable effort to monitor and oversee the treatment which is prescribed and administered by physicians practicing at the facility.

The plaintiff in the present case has introduced evidence tending to show that the defendant surgeons failed to keep progress notes on Lee's condition for a number of days in succession following the operation of 6 August 1974, in violation of a rule promulgated by Catawba. Catawba took no action against the surgeons for their violation. While this evidence is sufficient to show that Catawba may have violated the duty it owed to Lee to adequately monitor and oversee his treatment, plaintiff has offered no evidence to show that this omission contributed to Lee's death. Where a hospital's breach of duty is not a contributing factor to the patient's injuries, the hospital may not be held liable. *Habuda v. Hospital,* 3 N.C. App. 11, 164 S.E. 2d 17 (1968).

Neither may the previously discussed impeachment testimony of Mr. Bost, which was hearsay, alleging that Dr. Myers called Catawba an "inferior hospital" and that Catawba unreasonably delayed its referral of Lee to Baptist Hosiptal, be considered substantive evidence of the quality of care administered by Catawba. *State v. Mack,* 282 N.C. 334, 193 S.E. 2d 71 (1972); 1 Stansbury's N.C. Evidence § 46, p. 131 (Brandis rev. 1973). There was also no evidence at trial that Catawba failed to use reasonable care in selecting the defendant surgeons to practice at the hospital. Accordingly, the trial court correctly granted defendant Catawba's motion for a directed verdict. However, as discussed previously, there must be a new trial with respect to the defendant surgeons for the trial court's failure to admit the above testimony as impeachment evidence.

Since plaintiff's other assignments of error are not likely to occur on retrial, we decline to address them here.

As to defendant hospital, affirmed; as to individual defendants,

New trial.

Judges HEDRICK and MARTIN (Robert M.) concur.