BERGER, Judge.
 

 *535
 
 Anthony Worth Wyrick ("Defendant") appeals alleging the State's impeachment of Defendant with his post-Miranda silence was a violation of his Fifth and Fourteenth Amendment rights to be free from self-incrimination, to counsel, and to due process. Defendant also alleges that the prosecutor improperly cross-examined him regarding his post-arrest silence, and this allegedly improper impeachment resulted in prejudicial error. We disagree.
 

 Factual and Procedural Background
 

 D.K. was sixteen years old in 1985, and lived with her mother in a Charlotte apartment. On September 6, 1985, while D.K.'s mother was out of town, D.N., who was fifteen years old at the time, stayed in the apartment with D.K. At 4:30 a.m., they were awakened when the doorbell rang. They
 
 *609
 
 spoke with a man named "Tony" through the door, who claimed to be looking for the property manager's apartment. Tony left when the girls told him he had the wrong apartment.
 

 The girls were awakened again at 7:30 a.m. to D.K.'s dog barking and a man entering the room with a crowbar. He removed their clothing, tied their hands, and placed pillowcases over their heads. The man was later identified as Defendant. Defendant fondled the girls and inserted his fingers into their vaginas. He began having sexual intercourse with D.K, then forced her to perform oral sex on him, threatening to hurt D.N. if she refused. Defendant ejaculated into D.K.'s mouth and wiped her face off with a pillowcase. Subsequently, he had sexual intercourse with D.N.
 

 Defendant apologized to the girls and left the room. D.K. heard Defendant walk downstairs and exit through a sliding glass door. After he left, D.K. managed to get her hands free, but could not free D.N. D.K. called her brother, who came to the apartment and used a knife to free D.N.'s hands. The police were called at that time.
 

 D.K. and D.N. submitted to a sexual assault examination by Dr. Carey Ziemer at Charlotte Memorial Hospital. Dr. Ziemer determined that the results of D.K.'s examination was consistent with the information she had provided. For D.N., Dr. Ziemer observed a laceration to the
 
 *536
 
 base of her vulva that was still bleeding. Dr. Ziemer believed this injury occurred during a recent struggle. With the aid of a pediatric speculum, Dr. Ziemer observed that D.N.'s vagina had a whitish mucoid fluid with a reddish tinge. Dr. Ziemer collected additional evidence from the girls and provided the rape kits to law enforcement.
 

 Pillowcases, sheets, clothing, and other items were collected from the apartment by crime scene investigators. Semen was found on D.N.'s panties and vaginal swabs, D.K.'s shorts, and a bed sheet. However, DNA testing was not available in 1985, and the case went unsolved for nearly thirty years.
 

 In January 2006, the Charlotte-Mecklenburg Police Department ("CMPD") created a sexual assault cold case unit because the department had approximately 5,000 open rape cases. In 2013, Detective Troy Armstrong reviewed the evidence. He submitted the physical evidence to a crime lab in Beaufort County, South Carolina for DNA analysis. DNA analyst Timothy French examined physical evidence for biological fluids and DNA. DNA from one male individual was located on D.N.'s panties, vaginal swabs and shorts, a pillowcase, and bedsheets. The South Carolina crime lab established a DNA profile from the evidence collected in 1985. Defendant was developed as a suspect by the CMPD. Detective Armstrong discovered that Defendant lived within three and a half miles of D.K.'s apartment complex in 1985.
 

 On September 24, 2014, Defendant was arrested by CMPD. Defendant was read his
 
 Miranda
 
 rights, and signed a waiver before speaking with Detective Armstrong. Defendant informed officers he did not recall the details of that night. Detective Armstrong obtained buccal swabs from Defendant in a search incident to his arrest and sent the samples to the Beaufort County, South Carolina facility for testing. Defendant's DNA profile matched the male DNA profile on the evidence collected in 1985.
 

 On October 13, 2014, Defendant was indicted by a Mecklenburg County grand jury for one count of first degree burglary, two counts of first degree rape, three counts of first degree sexual offense, and two counts of first degree kidnapping.
 

 In May 2016, Defendant was tried in Mecklenburg County Superior Court. At trial, Defendant stated that he had a "memorable" consensual sexual encounter with two girls on September 6, 1985 despite not recalling that night while being interrogated by Detective Armstrong. The jury found Defendant guilty of two counts of second degree rape, three counts of second degree sexual offense, and two counts of second degree kidnapping. Defendant was sentenced pursuant to the Fair
 
 *537
 
 Sentencing Act to five consecutive forty year maximum sentences, and two consecutive thirty year maximum sentences which were to begin at the expiration of Defendant's federal imprisonment. Defendant was also ordered to register as a sex
 
 *610
 
 offender upon release for a period of thirty years. Defendant timely appealed.
 

 Analysis
 

 Defendant contends that the prosecutor improperly cross-examined him regarding his post-arrest silence when he testified at trial in violation of Rule 607 of the North Carolina Rules of Evidence. Defendant further contends that this allegedly improper impeachment resulted in prejudicial error, requiring a new trial. We disagree.
 

 "[O]ur standard of review for rulings made by the trial court pursuant to Rule 607 of the North Carolina Rules of Evidence is abuse of discretion."
 
 State v. Banks
 
 ,
 
 210 N.C. App. 30
 
 , 38,
 
 706 S.E.2d 807
 
 , 814 (2011) (citation omitted).
 

 The United States Constitution protects an individual from being "compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Under
 
 Miranda v. Arizona
 
 ,
 
 384 U.S. 436
 
 ,
 
 86 S.Ct. 1602
 
 ,
 
 16 L.Ed.2d 694
 
 (1966), individuals are guaranteed protections under the Fifth and Fourteenth Amendments of the U.S. Constitution during a custodial police interrogation. A criminal defendant's exercise of his right to remain silent cannot be used against him "to impeach an explanation subsequently offered at trial."
 
 Doyle v. Ohio
 
 ,
 
 426 U.S. 610
 
 , 618,
 
 96 S.Ct. 2240
 
 , 2245,
 
 49 L.Ed.2d 91
 
 , 98 (1976). The United States Supreme Court has given latitude to the several states to "formulate [their] own rules of evidence to determine when prior silence is so inconsistent with present statements that impeachment by reference to such silence is probative."
 
 Jenkins v. Anderson
 
 ,
 
 447 U.S. 231
 
 , 239,
 
 100 S.Ct. 2124
 
 , 2129,
 
 65 L.Ed.2d 86
 
 , 95 (1980).
 

 The North Carolina Constitution guarantees "[i]n all criminal prosecutions, every person charged with crime has the right to ... not be compelled to give self-incriminating evidence." N.C. Const. art. I, § 23. "Prior statements of a witness which are inconsistent with his present testimony are not admissible as
 
 substantive evidence
 
 because of their hearsay nature."
 
 State v. Mack
 
 ,
 
 282 N.C. 334
 
 , 339,
 
 193 S.E.2d 71
 
 , 75 (1972) (citations omitted) (emphasis added). However, our Supreme Court has established longstanding precedent that "such prior inconsistent statements are admissible for the purpose of impeachment."
 
 Id.
 
 at 340,
 
 193 S.E.2d at
 
 75 (citing
 
 State v. Chance
 
 ,
 
 279 N.C. 643
 
 ,
 
 185 S.E.2d 227
 
 (1971) ;
 
 State v. Britt
 
 ,
 
 225 N.C. 364
 
 ,
 
 34 S.E.2d 408
 
 (1945) ; Stansbury, N.C. Evidence, § 46 (2d ed. 1963)). "If the former statement fails to mention
 
 *538
 
 a material circumstance presently testified to, which it would have been natural to mention in the prior statement, the prior statement is sufficiently inconsistent, and is termed an
 
 indirect inconsistency
 
 ."
 

 Id.
 

 (citations, internal quotation marks, and brackets omitted).
 

 " 'The credibility of a witness may be attacked by any party, including the party calling him.' "
 
 State v. Williams
 
 ,
 
 355 N.C. 501
 
 , 533,
 
 565 S.E.2d 609
 
 , 628 (2002) (citing N.C.G.S. § 8C-1, Rule 607 (2001)),
 
 cert. denied
 
 ,
 
 537 U.S. 1125
 
 ,
 
 123 S.Ct. 894
 
 ,
 
 154 L.Ed.2d 808
 
 (2003). "However, extrinsic evidence of prior inconsistent statements may not be used to impeach a witness where the questions concern matters collateral to the issues."
 

 Id.
 

 (citing
 
 State v. Hunt
 
 ,
 
 324 N.C. 343
 
 , 348,
 
 378 S.E.2d 754
 
 , 757 (1989) ).
 

 On cross-examination, impeachment of a witness is proper if it "merely inquires into prior inconsistent statements."
 
 State v. Fair
 
 ,
 
 354 N.C. 131
 
 , 156,
 
 557 S.E.2d 500
 
 , 519 (citation and internal quotation marks omitted),
 
 reconsideration denied
 
 ,
 
 354 N.C. 576
 
 ,
 
 558 S.E.2d 862
 
 (2001),
 
 cert. denied
 
 ,
 
 535 U.S. 1114
 
 ,
 
 122 S.Ct. 2332
 
 ,
 
 153 L.Ed.2d 162
 
 (2002). Further, our Supreme Court has held "[s]uch questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving
 
 Miranda
 
 warnings has not been induced to remain silent."
 
 Id.
 
 at 156,
 
 557 S.E.2d at 518-19
 
 (citation and internal quotation marks omitted).
 

 Here, Defendant's testimony on direct examination highlighted many specific details of the night of September 6, 1985. Defendant recounted driving an unknown man home from a local nightclub to an apartment complex, meeting two young women in the complex's parking lot, and having a consensual sexual encounter with the two young women. Defendant explained that the two women offered him "white liquor," marijuana, and
 
 *611
 
 invited him to their apartment. However, Defendant failed to mention any of these details when questioned by Detective Armstrong. Instead, Defendant stated he did not recall the details of that night.
 

 On cross-examination, the prosecutor asked Defendant why he had not disclosed this detailed account to the detective during his interview two years prior to trial. The following transpired:
 

 THE STATE: Now, when Detective Armstrong interviewed you on September 24th, [2014], ... he gave you all the warrants and let you have plenty of time to read over the warrants; correct? Because you asked to see them because you wanted to read them.
 

 DEFENDANT: Yeah, that sounds right.
 

 *539
 
 THE STATE: And he sat there with you maybe thirty minutes or so while you went over and read them in detail. So you knew exactly what you were being charged with, and the address and the names of the victims, and everything that you were being accused of doing; isn't that right?
 

 DEFENDANT: Yes, ma'am.
 

 Defendant stated that he was unable to recall the account because he was medicated at the time of the interview due to a recent series of operations, and that the medication affected his memory during the interview.
 

 The prosecutor's cross-examination was directly related to the subject matter and details raised in Defendant's own direct testimony, including the nature of the sexual encounter itself, the police interrogation, and his prior convictions. Further, the inquiry by the prosecutor was not in an effort to proffer substantive evidence to the jury, but rather to impeach Defendant with his inconsistent statements.
 
 See
 

 Fair
 
 ,
 
 354 N.C. 131
 
 ,
 
 557 S.E.2d 500
 
 ;
 
 State v. Westbrooks
 
 ,
 
 345 N.C. 43
 
 ,
 
 478 S.E.2d 483
 
 (1996). Defendant's post-
 
 Miranda
 
 silence is within the exceptions since "no governmental action induced petitioner to remain silent before arrest."
 
 Westbrooks
 
 ,
 
 345 N.C. at 63
 
 ,
 
 478 S.E.2d at 495
 
 (citation and internal quotation marks omitted).
 

 Defendant failed to mention his story of a consensual sexual encounter to the detective which he later recalled with a high level of particularity during direct examination. Such a "memorable" encounter would have been natural for Defendant to recall at the time Detective Armstrong was conducting his investigation; thus, his prior statement was an "indirect inconsistency." Further, the prosecutor did not exploit Defendant's right to remain silent, but instead merely inquired as to why he did not remain consistent between testifying on direct examination and in his interview with the detective two years prior. Accordingly, the trial court did not err when it allowed the prosecutor to impeach Defendant with his inconsistent statements made at trial and two years prior to the detective.
 

 Conclusion
 

 The trial court did not err in allowing the cross-examination of Defendant in regards to his prior inconsistent statements. We conclude Defendant received a fair trial, free from error.
 

 NO ERROR.
 

 Judges DILLON and ZACHARY concur.