LELIA G. COLTRAINE, ADMINISTRATRIX OF THE ESTATE OF HUBERT GRAY COL-
TRAINE, DECEASED v. PITT COUNTY MEMORIAL HOSPITAL

No. 773SC381

(Filed 4 April 1978)

**Hospitals § 3.2— failure to restrain patient—failure to provide nurses—no action-
able negligence**

  In an action to recover for the death of plaintiff's intestate which resulted from defendant's allegedly negligent failure to provide adequate medical facilities, the trial court properly granted defendant's motion for directed verdict where the evidence was insufficient to show negligence on the part of defendant in failing to apply restraints to plaintiff's intestate so that he could not extricate himself and in failing to provide plaintiff's intestate with round the clock nurses; moreover, plaintiff failed to show that defendant's negligence, if any, was a proximate cause of deceased's death, since there was no evidence that defendant could have foreseen that failure to restrain deceased properly

and to provide him with round the clock nurses would result in deceased's fall from the second story of the hospital.

APPEAL by plaintiff from *Ervin, Judge.* Judgment entered 12 January 1977, in Superior Court, PITT County. Heard in the Court of Appeals 10 February 1978.

Plaintiff filed a complaint against defendant alleging that defendant hospital, acting by and through its employees, was negligent in failing to provide adequate medical facilities and that defendant's negligence was the proximate cause of the death of plaintiff's intestate. In its answer, defendant alleged that the complaint failed to state a claim for relief and further denied any negligence. In a later motion to amend its answer, defendant asserted the defense of contributory negligence on the part of plaintiff's intestate. The motion was allowed.

At the trial of this case, plaintiff's evidence tended to show that in December 1969, plaintiff's intestate, Hubert Gray Coltraine, had been admitted to Pitt County Memorial Hospital (hereinafter Hospital) for treatment for acute bronchitis as well as acute alcoholism. According to his doctor, Dr. W. S. Dawson, Mr. Coltraine became confused during his hospital stay and, as a result of that confusion, Dr. Dawson ordered a neurological consultation on 2 January 1970. The results of the neurological consultation were "basically negative." Thereafter, Dr. Dawson ordered that Mr. Coltraine be put on restraints, *i.e.,* a posey belt and wrist cuff restraints. On 13 January, Dr. Dawson ordered private duty nurses around the clock, and he stipulated that the nurses be registered nurses. There being no available registered nurses, however, no one was assigned to the patient around the clock.

On 14 January at approximately 1:30 or 1:45 p.m., Nancy Carter, a nursing student, securely placed the restraints on Mr. Coltraine. According to the record, the next time Mr. Coltraine was seen, at approximately 2:00 p.m., he was standing on the ledge of the second floor and holding the bottom of the third floor. He subsequently fell. Six hours after the fall, he died of hemorrhagic shock.

At the close of the plaintiff's evidence, defendant's motion for a directed verdict was granted on the sole ground that the

plaintiff failed to establish actionable negligence. Plaintiff appeals.

*Rodman, Rodman, Holscher & Francisco, by Edward N. Rodman and David C. Francisco, for plaintiff appellant.*

*Smith, Anderson, Blount & Mitchell, by John H. Anderson and Joseph E. Kilpatrick, for defendant appellee.*

ARNOLD, Judge.

We believe that plaintiff's evidence, viewed, as it must be, in the light most favorable to her, was not sufficient to overcome defendant's motion for directed verdict (G.S. 1A-1, Rule 50). In order to make out a case of negligence, plaintiff must introduce evidence tending to support the conclusion (1) that defendant was negligent and (2) that such negligence was a proximate cause of the death of plaintiff's intestate. *See, e.g. McNair v. Boyette*, 282 N.C. 230, 192 S.E. 2d 457 (1972). As to (1), the first prerequisite for establishing negligence is the existence of a legal duty, owed by defendant to plaintiff's intestate, to use due care. The second prerequisite is a breach of that duty. Plaintiff argues, first, that the evidence was sufficient to show that the hospital personnel were negligent in applying the restraints ordered by Dr. Dawson in a manner that allowed the deceased to extricate himself. The duty, according to plaintiff, was to apply properly the restraints ordered by Dr. Dawson, and that duty, she asserts, was breached. There was, however, no evidence that the hospital breached that duty, *i.e.*, that the hospital personnel improperly or negligently applied the posey belt and wrist cuffs. Nancy Carter's deposition stated that she was aware that Mr. Coltraine had extricated himself on previous occasions and that when she left him he was securely fastened. There was evidence that patients could extricate themselves even from properly fastened restraints. The record reveals no evidence of actionable negligence by defendant hospital.

Plaintiff also argues that there was evidence of actionable negligence in that defendant failed to provide plaintiff's intestate with round-the-clock nurses. The record shows that the doctor of Mr. Coltraine, Dr. Dawson, requested that registered nurses be assigned to the patient around the clock, that no registered nurses were available, and that, knowing this, Dr. Dawson made

no alternative requests. There is no evidence that any hospital personnel knew that Mr. Coltraine nevertheless needed constant care. Having informed the responsible doctor that no registered nurses were available, the defendant hospital, we believe, fulfilled its duty to the patient.

We also conclude that plaintiff's case failed to establish (2), that negligence, if any, was the proximate cause of the death of plaintiff's intestate. An essential element of proximate cause is reasonable foreseeability. *See, e.g. Pittman v. Frost*, 261 N.C. 349, 134 S.E. 2d 687 (1964). Assuming there were evidence that Ms. Carter improperly applied the restraints, or that defendant had a duty to provide round-the-clock attendants, there is no evidence that defendant hospital could have foreseen the fall from the ledge of the second floor. Dr. Dawson stated that the purpose of the restraints was to keep Mr. Coltraine from falling out of bed or out of a chair. He further stated that he did not view his patient as being suicidal. Hence, plaintiff also failed to show a proximate cause between the breach of duty, if any, and the fall by Mr. Coltraine.

The directed verdict in favor of defendant is, therefore,

Affirmed.

Judges PARKER and MARTIN concur.