WILLIE LEE BURNS AND JULIA COLSON BURNS v. FORSYTH COUNTY HOSPITAL AUTHORITY, INC., T/A FORSYTH MEMORIAL HOSPITAL

No. 8521SC1200

(Filed 1 July 1986)

1. **Damages § 14— injury to hospital patient—punitive damages—failure to show gross negligence—summary judgment**

    The trial court properly entered summary judgment for defendant on plaintiffs' claim for punitive damages where plaintiffs' evidence that defendant allowed one plaintiff to remain in a hospital ward with a mental patient who exhibited violent behavior indicated that defendant violated the standard of care and good medical practice in Winston-Salem, but nothing in plaintiffs' affidavit supported their allegations that defendant's acts constituted gross negligence or constituted a complete disregard for the life and safety of one plaintiff, a showing of which was required to support an award of punitive damages.

2. **Negligence § 53.2— hospital patient—breach of duty to follow doctor's order— no reasonable foreseeability of injury**

    Though the facts indicated a possible breach of defendant's duty to carry out a physician's order to move one plaintiff from a ward to a semi-private room, plaintiffs' evidence failed to establish that such breach, if any, was the proximate cause of one plaintiff's injury, since an essential element of proximate cause is reasonable foreseeability, and there was no evidence that defendant could have foreseen plaintiff's being hit by a chair which was thrown by a mental patient as a result of breaching its duty.

**3. Negligence § 56— injury of one hospital patient by another—medical records of patient—exclusion proper**

   In plaintiffs' negligence action wherein they alleged that one plaintiff was injured when he was not moved to a semi-private room as ordered by his doctor and was struck by a chair thrown by a mental patient who was placed in the same room as plaintiff, the trial court did not err in excluding from evidence as irrelevant certain medical records of the mental patient, since the records from a mental health center to which the patient had been confined prior to his admission to defendant hospital did not pertain to matters within defendant's knowledge; defendant could reasonably rely upon the referring physician's statements regarding the patient's condition; if the patient exhibited a tendency to be dangerous to others, it was incumbent upon the transferring institution to inform defendant accordingly; other excluded medical records pertained to the treatment and condition of the patient after plaintiff was injured by him; and, because foreseeability of injury is an essential element of proximate cause, plaintiffs could not rely upon defendant's knowledge after the injury in support of their negligence claim.

**4. Physicians, Surgeons and Allied Professions § 20.2; Negligence § 58.1— injury to hospital patient—standard instruction for health care providers not required**

   Where plaintiffs alleged that defendant was negligent in allowing one plaintiff to remain in a hospital ward with a mental patient who exhibited violent behavior which resulted in plaintiff's injury, the trial court did not err in failing to charge according to the standard jury charge for health care providers, since the alleged breach of duty in this case did not involve the rendering or failure to render professional nursing or medical services requiring special skills and so it was not necessary to establish the standard of due care prevailing among like hospitals in like situations in order to develop a case of negligence; rather, the applicable standard of care was that of a reasonable, prudent person; the hospital was under a duty to exercise ordinary care to keep the premises in a reasonably safe condition so as not to expose the patients unnecessarily to danger, to warn the patients of hidden unsafe conditions, and to discover hidden unsafe conditions by reasonable inspection and supervision; but such duties were limited to unsafe conditions of which the hospital had notice; the jury, by following the trial court's instruction, necessarily decided that the hospital did not have notice of an unsafe condition; having so decided, the jury would have been precluded from addressing the remaining issue; and plaintiffs therefore could not have been prejudiced by that part of the charge omitted.

   APPEAL by plaintiffs from *Ross, Judge*. Judgment signed 4 April 1985 in Superior Court, FORSYTH County. Heard in the Court of Appeals 13 March 1986.

   On 22 January 1982, plaintiffs instituted an action against defendant (case number 82CVS463). On 15 December 1982, plaintiffs filed a notice of voluntary dismissal without prejudice pursuant to Rule 41(a)(1), N.C. Rules Civ. P. On 17 June 1983, within

one year of dismissing the prior action, plaintiffs filed the complaint in this action, alleging, *inter alia*: On or about 6 June 1980, plaintiff Willie Lee Burns was admitted as a patient to Forsyth Memorial Hospital, at the request of his personal physician, Dr. Jaime Trujillo, for the purposes of having several diagnostic tests performed; that he was assigned to Room 839 with three other patients; that on or about 16 June 1980, Dr. Ernesto De La Torre entered an order into plaintiff Willie Lee Burns' medical record to the effect that plaintiff Willie Lee Burns should be transferred to a semi-private room; that as of 18 June 1980, plaintiff Willie Lee Burns had not been transferred and that on that day "a mental patient" named Daniel Moore was moved into Room 839; that upon learning that Daniel Moore "was violent and dangerous," plaintiff Julia Burns, wife of Willie Lee Burns, went to defendant's administration office and requested that her husband be transferred to a private or semi-private room; that on the evening of 18 June 1980, plaintiff Willie Lee Burns was recuperating in Room 839 after having a myelogram performed; that when plaintiff Willie Lee Burns was being fed his meal that evening, "Daniel Moore manifested his violent behavior by throwing his tray with his food and food continers [sic] across the hospital room"; that after this display of violence, defendant still failed to remove plaintiff Willie Lee Burns; that at approximately 2:00 a.m. on the morning of 19 June 1980, while plaintiff Willie Lee Burns was sleeping under heavy sedation, Daniel Moore threw a chair across the room, striking plaintiff in the left leg and left scrotum, "caus[ing] the plaintiff to fall out of his bed, thereby injuring plaintiff's back." Plaintiffs alleged nine grounds of negligence on the part of defendant. Plaintiffs alleged the negligent acts of defendant proximately caused injury to plaintiff Willie Lee Burns' left leg, left testicle and back. Plaintiff Willie Lee Burns sought damages for physical injuries, lost earnings, and mental anguish. He also sought punitive damages, claiming defendant's negligence constituted gross negligence. Plaintiff Julia Colson Burns sought damages for loss of consortium and mental anguish directly resulting from defendant's negligence. Defendant answered, denying all substantive allegations.

On or about 15 November 1984, defendant moved for summary judgment. On 29 November 1984, defendant's motion for summary judgment was denied, with the exception that the claim

for summary judgment as to punitive damages was granted in favor of defendant. The case went to trial before a jury during the 18 March 1985 session of Superior Court. At the close of plaintiffs' evidence, the court granted defendant's motion for a directed verdict to most of plaintiffs' negligence claims. The jury ruled in favor of defendant. On 4 April 1985, Judge Ross signed a judgment entered in accordance with the verdict. Plaintiffs appeal.

*Kennedy, Kennedy, Kennedy and Kennedy, by Harvey L. Kennedy and Harold L. Kennedy, III, for plaintiff appellants.*

*Bell, Davis & Pitt, P.A., by William Kearns Davis and Stephen M. Russell, for defendant appellee.*

JOHNSON, Judge.

Plaintiffs assign error to the granting of summary judgment in favor of defendant as to punitive damages, the granting of directed verdicts on the majority of plaintiffs' claims of negligence, and the exclusion of certain medical records; also plaintiffs' challenge the propriety of the jury charge.

Plaintiffs presented as their case in chief the testimony of both plaintiffs; Dr. Amon Funderburk, one of Willie Lee Burns' treating physicians at Forsyth Memorial Hospital; Everett Fox, an expert in the field of hospital administration; Dr. Joseph Oliver, an expert in the general practice of medicine and Willie Lee Burns' present doctor; two of the plaintiffs' daughters; and Mary Newell Waller, an expert in the field of clinical psychology.

Plaintiffs' evidence tended to show the following: On 28 May 1980, while Willie Lee Burns was driving home from a fishing trip, his "left eye was acting up." Upon his return home he went to see his regular doctor, Dr. Trujillo, who had him admitted to defendant hospital for tests, specifically a myelogram, to determine whether plaintiff had a pituitary tumor. Mrs. Burns requested a private or semi-private room, but Mr. Burns was placed in a ward. The subsequent tests revealed no tumor. When Willie Lee Burns was discharged on 1 July 1980, he had to use a wheel chair. After his discharge, he required assistance walking for the next eighteen months, required hospitalization on three more occasions, became impotent, continuously experienced severe lower

back pain, and required the continuous care of a physician and physical therapist up to the time of trial. According to the testimony of plaintiff and several expert witnesses, the deterioration in Willie Lee Burns' physical condition resulted from being hit by a chair thrown by Daniel Moore.

Daniel Moore was transferred to Forsyth Memorial Hospital on 21 May 1980 from Reynolds Health Center, a mental health facility. According to the report submitted by Dr. Bahrani, Daniel Moore's treating physician at Reynolds Health Center, Moore was a voluntary admission seeking treatment of alcoholism. Dr. Bahrani diagnosed the seventy-four year old male as suffering from alcoholism, acute alcohol withdrawal syndrome, and asthma. On 18 June 1980, Daniel Moore was moved into Room 839, a ward room with three other patients, including plaintiff Willie Lee Burns. Plaintiff Julia Colson Burns testified that when she came to visit her husband the evening of 18 June 1980, the "new man in the room [was] acting crazy." Mr. Moore "was hollering and screaming." "He threw his tray and food all over the room." Mrs. Burns observed Mr. Moore playing with his sexual organ. Mr. Moore was restrained by being tied across his stomach with a sheet. "The man was acting so crazy that I was scared to leave Willie in there." Because the nurses who were in the room did nothing to further restrain Mr. Moore, but simply showed amusement at his behavior, Mrs. Burns went to the nurses' station and demanded that Mr. Burns be moved to a private or semi-private room. Mrs. Burns told the nurse at the nurses' station that Daniel Moore was dangerous. The evidence further tended to show that, later that night, during the early morning hours, Daniel Moore got out of his bed, stood at the foot of his bed, and threw a chair. His restraint was still around his waist, with the ends tied to the bed rails. While still recuperating from the myelogram, Willie Lee Burns was struck by a chair in his left leg and left testicle and knocked to the floor.

[1] In the first Assignment of Error addressed, plaintiffs contend the court improperly granted summary judgment in favor of defendant regarding punitive damages. We disagree.

Where a motion for summary judgment is granted, the critical question is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the af-

fidavits, establish a genuine issue as to any material fact. *Oliver v. Roberts*, 49 N.C. App. 311, 271 S.E. 2d 399 (1980), *cert. denied*, --- N.C. ---, 276 S.E. 2d 283 (1981). When the moving party satisfies its burden of proof, the burden shifts to the nonmoving party to set forth specific facts showing that there is a genuine issue for trial. *Taylor v. Greensboro News Co.*, 57 N.C. App. 426, 291 S.E. 2d 852, *cert. granted*, 306 N.C. 751, 295 S.E. 2d 486 (1982), *appeal dismissed*, 307 N.C. 459, 298 S.E. 2d 385 (1983). In opposition to defendant's motion, plaintiffs offered the affidavit of Willie M. A. Kennedy, registered nurse and attorney licensed to practice law in North Carolina, formerly of plaintiffs' attorneys' law firm. The specific facts set forth in the affidavit supported Ms. Kennedy's opinion that defendant "violated the standard of care and accepted good medical practice in Winston-Salem and in similar communities." Nothing in her affidavit supported plaintiffs' allegations that defendant's acts constituted gross negligence or constituted a complete disregard for the life and safety of Willie Lee Burns. Punitive damages are recoverable in tort actions only where there are aggravating factors surrounding the commission of the tort such as actual malice, oppression, gross and wilful wrong, insult, indignity, or a reckless or wanton disregard of plaintiff's rights. *Shugar v. Guill*, 54 N.C. App. 466, 277 S.E. 2d 126, *modified*, 304 N.C. 332, 283 S.E. 2d 507 (1981). The nonmoving party may not rest upon the mere allegations of his pleadings. *Taylor, supra.* There was no evidence of any aggravating factors; the court thus did not err in granting summary judgment on the issue of punitive damages.

In plaintiffs' next Assignment of Error, plaintiffs contend that the court erred in granting directed verdicts on many of plaintiffs' claims of negligence. At the close of plaintiffs' evidence the court stated:

> With respect to the claims in the complaint, I think there is an issue for the jury whether the hospital knew or should have known at the time Mr. Moore was placed in the room with Mr. Burns or thereafter, that the hospital knew or reasonably should have known that Mr. Moore was dangerous to other patients and that if that in spite of that they put him in the room, and that was the proximate cause of the injury and if the injury is proven to the satisfaction of the jury, then a verdict on that basis could reasonably stand. But with re-

spect to the other allegations of negligence, . . . I don't believe there's sufficient evidence to allow any of those allegations of negligence to the jury. To that extent, [I] will allow the motion—

We find no error in the court's ruling. The claims of negligence contained in plaintiffs' complaint which did not go to the jury are:

That the defendant hospital was negligent in that:

A. It failed to place the plaintiff in a private of [sic] semi-private room as ordered by Dr. Ernesto De La Torre.

. . . .

E. It failed to apply effective restraints to Daniel Moore to prevent him from causing injury to the plaintiff.

F. It failed to provide nurses or other hosptital [sic] staff in the plaintiff's room to observe and control Daniel Moore, and to ensure that he not injure the plaintiff.

G. It abandoned the plaintiff by failing to treat his injuries, after he was injured in his hospital room on June 19, 1980.

H. It failed to segregate mental patients, especially Daniel Moore, from other patients in the hospital who were not mental patients.

I. It failed to conform to accepted good medical practice in the Winston-Salem community and in similar communities throughout the nation.

We find that all the above claims of plaintiffs, with the exception of (A) and (G) above, are subsumed in the issue that the court sent to the jury. Accordingly, there is no error. As to plaintiffs' allegations of abandonment, (G) above, we have carefully reviewed plaintiffs' evidence and find a complete lack of evidence to support this claim.

[2] We have also reviewed the record regarding plaintiffs' allegations of negligence for defendant's failure to place Mr. Burns in a private or semi-private room as ordered by Dr. Ernesto De La Torre, (A) above. Plaintiffs' evidence showed that on 16 June 1980, Dr. Ernesto De La Torre entered an order in plaintiff's chart as follows: "Transfer to semi-private room for [the] sake of his nerves." The hospital has a duty to make a reasonable effort

to oversee and monitor the physician's treatment of a patient. *Bost v. Riley*, 44 N.C. App. 638, 647, 262 S.E. 2d 391, 396, *cert. denied*, 300 N.C. 194, 269 S.E. 2d 621 (1980). The hospital has a duty to obey instructions of a doctor, absent the instructions being obviously negligent or dangerous. *See Habuda v. Rex Hospital*, 3 N.C. App. 11, 164 S.E. 2d 17 (1968). These duties flow directly from the hospital to the patient under the doctrine of corporate negligence, expressly adopted in North Carolina in the *Bost* decision, *supra*. The facts here do indicate a possible breach of the duty to carry out the physician's order; however, plaintiffs' case failed to establish that such breach, if any, was the proximate cause of Mr. Burns' injury. An essential element of proximate cause is reasonable foreseeability. *Coltraine v. Pitt County Memorial Hosp.*, 35 N.C. App. 755, 758, 242 S.E. 2d 538, 540 (1978). The evidence shows that Daniel Moore was not placed in Room 839 with Mr. Burns until two days after the physician entered his order to move Mr. Burns. Dr. De La Torre wrote that the purpose of the transfer was "for [the] sake of his nerves." There is no evidence that defendant hospital could have foreseen plaintiff being hit by a chair as a result of breaching this duty. Because there is no evidence to establish the necessary element of proximate cause, a directed verdict on this claim was also proper. Plaintiffs' second Assignment of Error is overruled.

[3]  In plaintiffs' next Assignment of Error, plaintiffs contend the court erred in excluding from evidence as irrelevant certain medical records of Daniel Moore, specifically, (1) the medical records of Daniel Moore from the Reynolds Health Center and (2) the medical records of Daniel Moore from defendant Forsyth Memorial Hospital after the time he allegedly injured plaintiff Willie Lee Burns until his discharge. Plaintiffs maintain that these records were critical to show Daniel Moore's dangerousness. We disagree.

The excluded medical records from Reynolds Health Center do not pertain to matters within defendant's knowledge. The medical records of Daniel Moore from defendant Forsyth Memorial Hospital from the time of his admission on 21 May 1980 until 19 June 1980, which were admitted into evidence, contain three pages of notes written by Dr. Bahrani, a physician who treated Daniel Moore at Reynolds Health Center. We find defendant hospital could reasonably rely upon the referring physician's statements regarding Daniel Moore's condition. If Daniel Moore

exhibited a tendency to be dangerous to others, it was incumbent upon the transferring institution to inform defendant accordingly. It is overly burdensome to impose a legal duty upon defendant to read through the entire medical records of all referrals. Accordingly, the medical records from Reynolds Health Center were properly excluded.

The excluded medical records of Daniel Moore from defendant Forsyth Memorial Hospital from 19 June 1980 until he was discharged contain information regarding Daniel Moore's treatment and condition *after* plaintiff Willie Burns was injured. These medical records could bear only upon defendant's knowledge after plaintiff's injury. Foreseeability of injury is an essential element of proximate cause. *Id.* Plaintiffs cannot rely upon defendant's knowledge after the injury in support of their negligence claim.

The complete medical records of Daniel Moore from defendant hospital were reviewed by the trial judge *in camera.* After ruling that records after 19 May 1980 were not relevant, the judge entered an order allowing plaintiffs' counsel to inspect these records after the trial, provided that these records be sealed for review by this Court. In their brief, plaintiffs place special emphasis upon information contained in a Code Sheet as being highly probative of the fact that Daniel Moore was suffering from a "major mental defect." Plaintiffs contend that this evidence alone would be "more than enough for the jury to conclude that he was dangerous. . . ." However, plaintiffs do not provide this Court with any medical definition of the allegedly "major mental defect," do not provide other medical information with which to assess the probable prejudicial effect of the excluded Code Sheet, nor indicate *when* during Daniel Moore's hospitalization this information came within defendant's knowledge, either actually or constructively. The burden is upon plaintiffs as appellants to show error and also to show that the alleged error was prejudicial and amounted to a denial of some substantial right. *Gregory v. Lynch,* 271 N.C. 198, 155 S.E. 2d 488 (1967). Plaintiffs did not meet their burden. Plaintiffs' third Assignment of Error is overruled.

[4] In plaintiffs' last Assignment of Error plaintiffs contend the court erroneously charged the jury. Specifically, plaintiffs contend that the court should have charged according to the standard jury

charge for health care providers, to wit: N.C.P.I.— Civ. 809.00. Plaintiffs further maintain that defendant is a health care provider as defined in G.S. 90-20.21.11 and, therefore, must comply with the standard of care for health care providers as set forth in *Wall v. Stout*, 310 N.C. 184, 311 S.E. 2d 571 (1984). We do not agree.

When the alleged breach does not involve the rendering or failure to render professional nursing or medical services requiring special skills, it is not necessary to establish the standard of due care prevailing among hospitals in like situations in order to develop a case of negligence. *Norris v. Rowan Memorial Hospital*, 21 N.C. App. 623, 626, 205 S.E. 2d 345, 348 (1974). In such cases *Wall v. Stout, supra*, is not apposite. The standard of care of a reasonable, prudent person is generally the standard the courts have applied. *Bost v. Riley, supra* (regarding the hospital's duty to use reasonable care in soliciting surgeons to practice at hospital); *Starnes v. Charlotte-Mecklenburg Hospital Authority*, 28 N.C. App. 418, 221 S.E. 2d 733 (1976) (regarding the hospital's duty to provide equipment reasonably suited for the intended use).

In *Payne v. Garvey*, 264 N.C. 593, 142 S.E. 2d 159 (1965), a patient's eye was injured as a result of a thermometer breaking while the nurse was shaking down the thermometer. The Court held that the hospital has a duty to make a reasonable inspection of its equipment and remedy any discoverable defects. *Id.* at 595, 142 S.E. 2d at 161. The case at hand is similar to *Garvey, supra*, in that it concerns the hospital's duty to provide for the patient's safety while he is on the hospital premises. We find the body of tort law regarding negligence in the condition or use of the premises applicable. The patient is an invitee. *See Hitchings v. Albemarle Hospital*, 220 F. 2d 716 (1955). As such, the hospital has a duty to exercise ordinary care to keep the premises in a reasonably safe condition so as not to expose the patient unnecessarily to danger. *See Wrenn v. Hillcrest Convalescent Home Inc.*, 270 N.C. 447, 154 S.E. 2d 483 (1967). The hospital is not an insurer of the safety of its patients. *See Graves v. Charlotte Lodge No. 392*, 268 N.C. 356, 150 S.E. 2d 522 (1966). The hospital is not required to take precautions for its patients' safety such as will make it impractical for it to operate its business. *See Hedrick v. Tigniere*, 267 N.C. 62, 67, 147 S.E. 2d 550, 554 (1966). The duty the hospital

owes its patients is to exercise reasonable or ordinary care to maintain in a reasonably safe condition that part of the hospital designed for the patients' use. *See Samuel v. Simmons*, 50 N.C. App. 406, 408, 273 S.E. 2d 761, 762, *cert. denied*, 302 N.C. 399, 279 S.E. 2d 352-53 (1981). This duty imparts the additional duties owed to an invitee, that is, the duty to warn the patient of hidden unsafe conditions and the duty to discover hidden unsafe conditions by reasonable inspection and supervision. *See Jones v. Pinehurst, Inc.*, 261 N.C. 575, 578, 135 S.E. 2d 580, 582 (1964). These duties are limited to unsafe conditions of which the hospital has notice. *See Revis v. Orr*, 234 N.C. 158, 160, 66 S.E. 2d 652, 654 (1951). It is only when the dangerous condition is known to the hospital or should have been known to the hospital that recovery is permitted. *Id.*

In *Witherspoon v. Owen*, 251 N.C. 169, 110 S.E. 2d 830 (1959), the Court stated that the proprietor of a restaurant owes a duty to protect the invitee against the foreseeable assaults by another invitee. Evidence of the likelihood of committing an assault can be shown by past conduct and previously exhibited bad temper. *Wegner v. Delly-Land Delicatessen, Inc.*, 270 N.C. 62, 65, 153 S.E. 2d 804, 807 (1967). We find the hospital similarly owes a duty to protect the patient against foreseeable assaults by another patient.

In the case *sub judice*, the court instructed the jury regarding the hospital's duty to the patient as follows:

The plaintiff contends and the defendant denies that the defendant was negligent in that the defendant knew or should have known that the patient Daniel Moore was dangerous or might reasonably be expected to be dangerous to other patients and that the defendant failed to use ordinary and reasonable care by allowing the patient Daniel Moore to be placed in the room with the plaintiff and or by failing to remove the patient Daniel Moore from the room of the plaintiff.

The jury returned a verdict in favor of defendants. By arriving at its verdict pursuant to the foregoing instruction, the jury necessarily decided the threshold issue, that is, that the hospital did not have notice of an unsafe condition. Having so decided, the jury would have been precluded from addressing the remaining

issues. Accordingly, plaintiffs could not have been prejudiced by that part of the charge omitted. This Assignment of Error is overruled. We find

No error.

Judges ARNOLD and WHICHARD concur.