Footnotes in HTML versions of opinions are designated by superscript “balloons” or boxes (click on 
either for the footnote text) and are not numbered. For an exact copy of the 
opinion, retrieve the Adobe PDF version.
 
IN 
THE SUPREME COURT OF TEXAS
 
════════════
No. 02-0849
════════════
 
Diversicare General Partner, Inc., Diversicare Leasing Corporation, Advocat, Inc., and Texas Diversicare Limited Partnership d/b/a Goliad Manor, 
Petitioners,
 
v.
 
Maria G. Rubio and Mary 
Holcomb as Next Friend of Maria G. Rubio, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Thirteenth District of 
Texas
════════════════════════════════════════════════════
 
Argued September 24, 2003
 
 
            Chief Justice 
Jefferson, concurring in part, dissenting in part, and concurring in the 
judgment.
 
            I 
join in the Court’s holding that Rubio’s allegations based on the incidents of 
sexual assault constitute a “claimed departure from accepted standards of 
safety,” and are therefore barred by the MLIIA’s two-year statute of limitations. ___ S.W.3d ___, ___ (Tex. 2005). I do not, 
however, agree with the Court’s conclusion that Rubio has presented a 
cause of action for departures from accepted standards of health care. The 
principal allegation in Rubio’s complaint—that Diversicare failed to protect her from a known sexual 
predator—raises a premises liability claim which falls 
under the statute’s “safety” component.
 
I
Medical Malpractice versus 
Ordinary Negligence
 
            In 
a health care setting, the line between medical malpractice and ordinary 
negligence is easily blurred. As many courts have observed, “the distinction 
between medical malpractice and negligence is a subtle one, for medical 
malpractice is but a species of negligence and ‘no rigid analytical line 
separates the two.’” Weiner v. Lenox Hill Hosp., 673 N.E.2d 914, 916 
(N.Y. 1996) (citation omitted), quoted in Gunter v. Lab. Corp. of Am., 
121 S.W.3d 636, 639 (Tenn. 2003). Thus, determining the appropriate 
standard of care to apply to a patient’s claim against a health care provider is 
seldom an easy task. See Gold v. Greenwich 
Hosp. Ass’n, 811 A.2d 1266, 
1270 (Conn. 2002). 
            In 
this case, the Court parses medical malpractice from ordinary negligence in a 
claim involving the alleged sexual assault of a nursing home patient. See 
___ S.W.3d at ___. Based on this analysis, the Court concludes that all of 
Rubio’s claims are health care liability claims under the MLIIA. Id. at 
___. But every Texas court of appeals to consider the issue 
has held otherwise. In addition to the court of appeals in the present case, 
three other courts have determined that the MLIIA does not apply to claims 
arising out of a patient’s assault of another patient because such claims were not based on medical or health care services. See 
Healthcare Ctrs. of Tex., Inc. v. Rigby, 97 S.W.3d 
610, 621-22 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); 
Zuniga v. Healthcare San Antonio, 94 S.W.3d 778, 782-83 (Tex. App.—San 
Antonio 2002, no pet.); Bush v. Green Oaks Operator, Inc., 39 
S.W.3d 669, 673 (Tex. App.—Dallas 2001, no pet.).
            In 
Rigby, the court held that a claim against a nursing home arising out of a 
patient’s assault of another patient was not a health care liability claim. 
97 S.W.3d at 622. In that case, a male nursing home 
resident, who had a known history of sexually violent behavior, attempted to 
sexually assault a female resident. Id. at 614-17. The court concluded that the claim involved 
“simple negligence in failing to take adequate safety measures to protect [the 
nursing home] residents from a known sexual deviant.” Id. at 622; see 
also id. at 628 (Brister, C.J., 
concurring).
            Likewise, 
the Zuniga court held that the MLIIA did not apply to a claim 
involving a psychiatric hospital patient’s allegations that she was sexually assaulted by another patient. 94 S.W.3d at 780, 783. The plaintiff in that case alleged 
that the hospital “was negligent in failing to: protect her from abuse, take 
[sic] reasonable efforts to prevent actions by another person that resulted in 
physical injury, make reasonable efforts to prevent sexual contact, and provide 
her a safe environment.” Id. at 
782. The hospital argued that Zuniga’s claims asserted, in essence, a 
failure to “provide a therapeutic environment that would keep Zuniga safe from 
herself and others.” Id. The court rejected the hospital’s 
argument noting: “While we agree that preventing a patient from harming herself 
or others is part of the treatment provided to an involuntarily committed 
psychiatric patient, the allegation of injury here was not Zuniga’s harm to 
herself or to others. Instead, the allegation is another patient’s assault of 
her while on [the hospital’s] premises.” Id.
            Finally, 
in Bush, the court held that a patient’s claim against a hospital arising 
from an alleged attack by a fellow patient with a known propensity for violent 
behavior was not a health care liability claim under the MLIIA. 39 S.W.3d at 670, 672. Bush, the plaintiff patient, claimed 
that the hospital “was negligent either in failing to warn her of the known 
danger or in failing to maintain the premises in a safe manner or both.” 
Id. at 
670-71. The hospital argued that Bush’s claim was “fundamentally a claim 
for negligent diagnosis and lack of proper treatment with respect to her 
assailant” and thus was subject to the MLIIA. Id. at 672. The court disagreed, noting: “Although [the hospital’s] alleged failure to provide 
Bush with a reasonably safe environment may ultimately involve a determination 
of whether the hospital breached a standard of care with respect to [the 
assailant], Bush’s claim, as pleaded, is not for negligence in her medical 
treatment.” Id. 
            Indeed, 
many courts analyzing similar claims under comparable statutes have held that 
claims involving inpatient assault sound in ordinary negligence rather than 
medical malpractice. See, e.g., Andrea N. v. Laurelwood Convalescent Hosp., 16 Cal. Rptr.2d 894, 903 (Cal. Ct. App. 1993), review 
granted, 851 P.2d 801, 802 (Cal. 1993), 
and review dismissed, 865 P.2d 632 (Cal. 1994); Lauria v. W. Rock Health, Inc., No. 
CV03082278, 2004 WL 201939, at *2 (Conn. Super. Ct. Jan. 13, 2004); 
Delaney v. Newington Children’s Hosp., No. CV-93-0524063, 1994 WL 228322, at *2-3 (Conn. Super. Ct. May 9, 1994); Robinson v. W. Fla. Reg’l Med. Ctr., 675 So.2d 226, 228 (Fla. Dist. Ct. App. 
1996); Hicks v. Baptist Hosp., Inc., 676 So.2d 1019, 1019 (Fla. Dist. Ct. 
App. 1996); Palm Springs Gen. Hosp., Inc. v. Perez, 661 So.2d 1222, 1223 
(Fla. Dist. Ct. App. 1995); Klingman v. Green, 
616 So.2d 762, 763-64 (La. Ct. App. 1993); Reaux v. Our Lady 
of Lourdes Hosp., 492 So.2d 233, 234-35 (La. 
Ct. App. 1986); Afamefune v. Suburban Hosp., 
Inc., 870 A.2d 592, 602-03 (Md. 2005); 
Borrillo v. Beekman 
Downtown Hosp., 537 N.Y.S.2d 219, 220-21 (N.Y. 
App. Div. 1989); Sumblin v. Craven County Hosp. 
Corp., 357 S.E.2d 376, 377-79 (N.C. Ct. App. 
1987); Burns v. Forsyth County Hosp. Auth., Inc., 344 S.E.2d 839, 846 (N.C. Ct. App. 
1986). But see 
Dorris v. Detroit Osteopathic Hosp. Corp., 594 N.W.2d 455, 466-67 (Mich. 1999); Smith 
v. Four 
Corners Mental Health Ctr., Inc., 70 P.3d 904, 914 (Utah 2003). 

A
Premises Liability
 
            In 
applying the MLIIA to this case, the Court characterizes Rubio’s claims as 
inseparable from the health care related issues of inadequate supervision and 
nursing services. __ S.W.3d at __. But Rubio’s complaint, at its core, is that the nursing home 
did not protect her from repeated acts of sexual abuse and assault committed by 
a known sexual predator. 

Contrary to the Court’s interpretation, the sexual assault allegations are not 
connected to or dependent on the claims for inadequate monitoring and 
supervision. Rather, construed liberally, the sexual assault allegations are 
claims for “inadequate security, independent of any medical diagnosis, treatment, or care.” Robinson, 675 So.2d at 228. In other words, Rubio’s complaint, on its 
face, asserts a cause of action for ordinary premises liability. 
            According 
to the Court, a nursing home’s 
duty to its patients cannot be compared to the duty a 
regular premises owner would owe to a resident because the residents of a 
nursing home are there “for care and treatment, not merely for shelter.” __ S.W.3d at ___. Rubio’s assault allegations, however, are not tied to the nursing home’s provision of care and 
treatment. Several courts have recognized that, in addition to the heightened 
standard of care that accompanies the rendering of professional services, health 
care facilities also owe their patients a duty to exercise ordinary care in the 
maintenance of their premises. See Charrin v. 
Methodist Hosp., 432 S.W.2d 572, 574-75 (Tex. Civ. 
App.—Houston [1st Dist.] 1968, no writ) (“A patient accepted by a hospital 
enjoys the status of an invitee or business visitor entitled to the exercise of 
ordinary care by the hospital to keep its premises in reasonably safe condition 
for the expected use. Thus, the hospital as occupier of the premises has a duty 
to keep them in a reasonably safe condition for its invitees, to warn or protect 
its invitees from any dangers of which it knows or should know in the exercise 
of ordinary care.”) (citation omitted); Burns, 
344 S.E.2d at 846 (“[T]he hospital has a duty to exercise ordinary care to 
keep the premises in a reasonably safe condition so as not to expose the patient 
unnecessarily to danger.”).
            A 
tenant’s claim against a landowner for failing to provide adequate security 
against foreseeable criminal conduct is typically a premises liability claim. 
See Timberwalk 
Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 753 (Tex. 1998). I do 
not see why the same claim should be treated 
differently in this case simply because the landowner is a health care provider. 
See Sumblin, 357 S.E.2d at 378-79 (recognizing 
that “a hospital, much like the proprietor of any public facility, owes a duty 
to its invitees to protect the patient against foreseeable assaults by another 
patient”); Burns, 344 S.E.2d at 846-47 (“[T]he proprietor of a restaurant 
owes a duty to protect the invitee against the foreseeable assaults by another 
invitee. . . . We find the hospital similarly owes a duty to protect the patient 
against foreseeable assaults by another patient.”). 
            Although 
providing care and treatment to patients may be a nursing home’s main function, 
not every duty owed to a nursing home resident stems from medical treatment or 
health care. A nursing home serves dual roles as both a health care provider and 
residential facility. See Richard v. La. Extended Care Ctrs., Inc., 835 So.2d 460, 468 (La. 2003) (noting that 
“[i]n the case of a nursing home, the nursing home 
resident is not always receiving medical care or treatment” and thus not all 
claims against a nursing home will involve medical treatment). Here, Rubio 
alleges that Diversicare failed to furnish her with “a 
reasonably safe premises” and failed “to exercise ordinary care to protect her 
from a sexual predator.” These allegations stem from the nursing home’s duty as 
a premises owner rather than as a health care provider and thus are classic 
premises liability claims. 
B
 Expert Testimony
 
            Furthermore, 
I do not agree that, as a matter of law, establishing the standard of care 
necessary to prevent inpatient assaults requires medical expertise. 

Numerous courts, both in Texas and elsewhere, have determined 
that specialized medical knowledge is not necessary to establish a breach of 
duty for claims involving patient assault. See, e.g., 
Sisters of Charity of the Incarnate Word, Houston, Tex. 
v. Gobert, 992 S.W.2d 25, 30 (Tex. App.—Houston 
[1st Dist.] 1997, no pet.) (considering patient’s 
allegation that she was sexually assaulted by another patient and concluding 
that “[a] determination that [the hospital] breached the standard of care by its 
negligent failure to monitor the patients’ rooms, and the comings and goings of 
patients into and out of each other’s rooms is not one requiring special 
training, insight, or proof”); Juhnke v. 
Evangelical Lutheran Good Samaritan Soc’y, 634 
P.2d 1132, 1136 (Kan. Ct. App. 1981) (finding “that the trier of fact would have been fully capable of determining, 
without the aid of expert testimony, whether the defendant nursing home breached 
its duty to exercise reasonable care to avoid injury to [a] patient” assaulted 
by a fellow patient); Virginia S. v. Salt Lake Care Ctr., 741 P.2d 969, 
972 (Utah Ct. App. 1987) (“In the present case, where a mentally and physically 
incapacitated seventeen-year-old girl was raped while under the care and custody 
of the defendant nursing home, there are no medical technicalities involved that 
call for expert testimony to determine whether the nursing home breached its 
standard of care.”); see also Rigby, 97 S.W.3d at 628 (Brister, C.J., 
concurring) (“I agree with the Court this is not a medical malpractice case, as 
the propriety of failing to supervise a sexual deviant in a nursing home is 
within the common knowledge of laymen.”).
            In 
a comparable case, the Michigan Supreme Court recently held that expert 
testimony was not required to bring a claim against a nursing home when the 
allegations involve a nursing home’s failure to protect a patient from a known 
danger, stating: 
 
This claim sounds in 
ordinary negligence. No expert testimony is necessary to determine whether 
defendant’s employees should have taken some sort of corrective action to 
prevent future harm after learning of the hazard. The fact-finder can rely on 
common knowledge and experience in determining whether defendant ought to have 
made an attempt to reduce a known risk of imminent harm 
to one of its charges. 
 
Bryant 
v. Oakpointe Villa Nursing Ctr., 684 N.W.2d 864, 
875 (Mich. 
2004) (emphasis in original). The same principle applies here. The Court 
posits that “[i]t is not within the common knowledge 
of the general public to determine the ability of patients in weakened 
conditions to protect themselves” or to determine the means used to restrain a 
“potential attacker.” ___ S.W.3d at ___. Those 
statements would be true if the jury were asked to assess the patient’s (or her 
attacker’s) mental or physical condition. But no such 
assessment is necessary under the facts alleged here. In her complaint, Rubio 
alleges that the sexual abuse she endured was “repetitious and recurring,” and 
that Diversicare was aware of the attacks and was 
therefore “in the unique position to predict a repeat of such behavior by the 
predator and to take preventative measures to avert any reoccurrence.” A nursing 
home’s obligation to secure its patients against multiple attacks by a known 
sexual predator is well within the purview of common knowledge.
II
The MLIIA
 
            Although 
Rubio’s claims involve premises liability rather than medical malpractice, the 
distinction is not outcome determinative here. The Legislature has captured both 
concepts under the broad rubric of “health care liability claim,” as defined by 
the MLIIA:
 
“Health care liability 
claim” means a cause of action against a health care provider or physician for 
treatment, lack of treatment, or other claimed departure from accepted standards 
of medical care or health care or safety which proximately results in 
injury to or death of the patient, whether the patient’s claim or cause of 
action sounds in tort or contract.
 
Act of May 30, 1977, 65th 
Leg., R.S., ch. 817, § 1.03(a)(4), 1977 Tex. Gen. Laws 2039, 2041 (former Tex. Rev. Civ. Stat. 
art. 4590i, § 1.03(a)(4)), 
repealed and codified as amended by Act of June 2, 2003, 78th Leg., R.S., 
ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 
847, 864, 884 (current version at Tex. 
Civ. Prac. & Rem. Code § 74.001(a)(13)). Here, there can be little doubt that Rubio’s 
complaint involves a “claimed departure from accepted standards of safety.” 

Id. 
Thus, I agree that Rubio’s claims fall within the statute.  
            Both Justice O’Neill and Rubio favor a 
narrower interpretation of safety advanced by several of the courts of appeals 
under which “safety” is read to mean safety as it 
relates to the provision of health care. ___ S.W.3d at ___ (O’Neill, J., 
dissenting); see Rogers v. Crossroads Nursing Serv., Inc., 13 S.W.3d 417, 418-19 (Tex. App.—Corpus 
Christi 1999, no pet.) (opining that “[t]he word 
‘safety’ cannot be read in isolation, and the phrase ‘accepted standard of . . . 
safety’ must be read in context to mean ‘accepted standard of safety within 
the health care industry.’”) (italics in 
original), cited with approval in Bush, 39 S.W.3d at 673, and 
Rigby, 97 S.W.3d at 621; see also Zuniga, 94 S.W.3d at 783 
(quoting Rigby, 97 S.W.3d at 620-21). While this construction of “safety” 
is defensible as a matter of policy, it is not faithful to the statute’s plain 
text.
            As 
we have often explained: 
 
Courts must take 
statutes as they find them. More than that, they should be willing to take them 
as they find them. They should search out carefully the intendment of a statute, 
giving full effect to all of its terms. But they must 
find its intent in its language, and not elsewhere. They are not the law-making 
body. They are not responsible for omissions in legislation. They are 
responsible for a true and fair interpretation of the written law. It must be an 
interpretation which expresses only the will of the 
makers of the law, not forced nor strained, but simply such as the words of the 
law in their plain sense fairly sanction and will clearly sustain.
 
Simmons v. Arnim, 220 S.W. 66, 70 (Tex. 1920), quoted in 
St. Luke’s Episcopal Hosp. v. Agbor, 952 S.W.2d 
503, 505 (Tex. 1997), RepublicBank Dallas, 
N.A. v. Interkal, Inc., 691 S.W.2d 605, 607 
(Tex. 1985), and Tex. Highway Comm’n v. El 
Paso Bldg. & Constr. Trades Council, 234 
S.W.2d 857, 863 (Tex. 1950). Straightforward statutory construction ensures that 
ordinary citizens are able “to rely on the plain language of a statute to mean 
what it says.” Fitzgerald v. Advanced Spine Fixation Sys., 996 S.W.2d 
864, 866 (Tex. 
1999). But when courts “abandon the plain meaning of 
words, statutory construction rests upon insecure and obscure foundations at 
best.” State v. Jackson, 376 S.W.2d 341, 346 (Tex. 1964) (quoting 
State Bd. of Ins. v. Betts, 315 S.W.2d 279, 281(Tex.1958)). 
            The 
MLIIA explicitly provides that “any legal term or word of art used in this part, 
not otherwise defined in this part, shall have such meaning as is consistent 
with the common law.” Act of May 30, 1977, 65th Leg., R.S., 
ch. 817, § 1.03(b), 1977 Tex. Gen. Laws 2039, 
2041 (former Tex. Rev. Civ. Stat. 
art. 4590i, § 1.03(b)), repealed and codified as 
amended by Act of June 2, 2003, 78th Leg., R.S., ch. 204, §§ 10.01, 10.09, 2003 Tex. Gen. Laws 847, 866, 
884 (current version at Tex. Civ. Prac. & 
Rem. Code § 74.001(b)). 
Because the statute does not define “safety,” we must assign it its common 
meaning. Id. Safety is commonly 
understood to mean protection from danger. See Black’s Law Dictionary 1362 (8th ed. 2004) (defining “safe” as “[n]ot exposed to danger; not causing danger”). The specific 
source of that danger, be it a structural defect, 
criminal assault, or careless act, is without limitation. While it may be 
logical to read into the statute a requirement that a safety related claim also 
involve health care, there is nothing implicit in 
safety’s plain meaning nor explicit in the MLIIA’s 
language that allows us to impose such a restriction. 

Accordingly, to give full effect to the MLIIA’s 
language, we must recognize that a health care liability claim includes a 
complaint that a patient was inadequately protected 
from the danger of sexual assault. 
 
III
Conclusion
 
            In 
defining health care liability claims as it did, the Legislature created a 
statute with a broad scope. Complaints about the breadth of this statute should be directed to the Legislature, not to this Court, for 
the courts must “take statutes as they find them.” Simmons, 220 S.W. at 
70. Accordingly, I concur in part III(B)(3) of the 
Court’s opinion and concur in the judgment. 
 
 
____________________________________
Wallace B. Jefferson
Chief Justice
 
OPINION DELIVERED: October 14, 2005