***********
Plaintiff's Affidavit and Defendant's Answer raise the following:
 ISSUES
1. Did Defendant's employees breach a duty of care owed to the Plaintiff resulting in the burns Plaintiff sustained from making contact with a radiator on or about December 13, 2004?
2. Was Plaintiff contributorily negligent in causing his own injuries?
3. What, if any, damages did the Plaintiff sustain as a result of any breach of duty owed to the Plaintiff?
 ***********
The Full Commission reviewed the prior Decision and Order based upon the record of proceedings before Deputy Commissioner Harris. The appealing party has not shown good *Page 2 
grounds to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Decision and Order. Therefore, the Full Commission affirms the Decision and Order with minor modifications.
 ***********
The following documents were admitted into evidence as:
 EXHIBITS
1. Stipulated Exhibit 1: Executed Pre-Trial Agreement.
2. Plaintiff's Exhibit 1: Defendant's Responses to Plaintiff's First Set of Discovery Requests.
3. Plaintiff's Exhibit 2: Medical records.
4. Plaintiff's Exhibit 3: Medication Administration Record.
5. Plaintiff's Exhibit 4: Nurse's note dated 12/15/04.
6. Plaintiff's Exhibit 5: Nurse's note dated 12/15/04.
7. Plaintiff's Exhibit 6: Transcript of pre-hearing deposition of Zoe Wainaina.
8. Defendant's Exhibit 1: Transcript of pre-hearing deposition of Plaintiff.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is 27 years old, with a date of birth of May 17, 1982. He has been incarcerated in Defendant's custody at Central Prison since 2003. Plaintiff was incarcerated following his conviction for armed robbery and conspiracy to commit armed robbery. *Page 3 
2. During the course of the robbery, Plaintiff was shot and suffered damage to his spinal cord, resulting in paralysis in the lower half of his body. As of December 13, 2004, Plaintiff retained full feeling above his waist and some patchy areas of sensation from his waist down into his mid-thighs. From his knees down, Plaintiff experienced no sensation.
3. While incarcerated, Plaintiff developed an ulcer in his lower right buttock that required extensive medical treatment, including skin graft surgery at UNC Hospitals.
4. Upon returning to Central Prison from UNC Hospitals on or about December 13, 2004, Plaintiff was domiciled in a small room at Central Prison Hospital. The room contained two hospital beds. Plaintiff was situated in the bed oriented parallel to a wall along the length of which ran a radiator. The beds were on wheels, and Plaintiff's bed was pushed up right next to the radiator. The remaining bed in the room was unoccupied.
5. During the night of December 13-14, 2004, Plaintiff was heavily medicated with pain medications, including Methadone, rendering him extremely drowsy. His treating physician, Dr. Igboekwe, instructed Plaintiff not to move while he was in bed because doing so might burst the sutures recently implanted at UNC Hospitals. Plaintiff's goal, in accordance with his doctor's instructions and with the aid of the Methadone, was to sleep without moving about.
6. On December 13 and 14, 2004, the following nurses employed by Defendant were working at the Central Prison Hospital. Each of the following nurses were on duty and responsible for maintaining Plaintiff's safety while he was in the bed next to the radiator: Renee Valentine, Zoe Wainaina, Stephanie Best, Sherry Long, Wanda Mitchell, George Umoko, Diane Advesi, Nancy Norwood, Gassimo Abdulahi, Manda McIntyre and Pamela Lechuga.
7. Nurse Pamela Lechuga specifically knew of the danger posed by the radiator, and she had instructed Plaintiff to stay away from it prior to the night in question. *Page 4 
8. Plaintiff was incapable of moving from his bed next to the heater into the remaining unoccupied bed in the room because, besides being paralyzed from the waist down and heavily medicated, he had surgical draining tubes inserted in his legs as a result of the recent surgery at UNC Hospitals.
9. During the night of December 13-14, 2004, Plaintiff was lying in bed in a fetal position with his back toward the radiator and was awakened by severe pain in his buttocks just below his waistline. He observed a large blister in that location that had bubbled out. When he touched the blister, fluid drained out of it as the skin fell away. His skin had been burned through direct contact with the hot radiator. Given his paraplegia and limited sensation below his waist, Plaintiff could not determine the depth of the burn.
10. Plaintiff activated a call button to summon the nurses on duty, and he also yelled for help. Meanwhile, he adjusted his body as far from the radiator as he could.
11. After approximately 45 minutes, members of the nursing staff responded to Plaintiff's call and adjusted him in the bed with his back away from the radiator. Still in a fetal position, Plaintiff's knees and lower legs were in close proximity to the radiator. The nurses failed to move the bed away from the radiator or transfer Plaintiff to the unoccupied bed.
12. Later that night, Plaintiff sustained further burns from the radiator to his right knee and left ankle.
13. Because he was heavily medicated at the time, Plaintiff could not recall which specific nurses had been on duty on the night of December 13-14, 2004.
14. Plaintiff's burns were caused by either coming into contact with or being in very close proximity to the radiator while it was running. *Page 5 
15. On the morning of December 14, 2004, Dr. Igboekwe assessed Plaintiff as suffering second degree burns. He initiated treatment with silver nitrate applications. Burn treatments spanned approximately four weeks. Plaintiff was moved to the other bed in the room, away from the radiator.
16. Plaintiff's experienced pain from the burns that he could feel, the principle source of pain near his waistline. Plaintiff could not sense the burns to his right knee and left ankle. Plaintiff's pain was intense for the week following the incident and subsided over approximately two weeks. The burns were noted to be completely healed on January 18, 2005.
17. The second degree burns resulted in the following scarring: a) approximately four square inches of brownish and grayish scarring on his waistline above his right buttock; b) slightly less than 1 square inch of scarring on the outside of his lower right hip proximal to his normal skin tone but slightly indented; c) reddish scarring of some one square inch on his right kneecap; d) slightly less than one square inch on the outside of his right kneecap, and; e) approximately one square inch of dark red scarring with a wrinkled appearance outside the dark red area on the outside of his left ankle.
18. The scarring would be completely covered by Plaintiff's clothing unless he wore shorts.
19. Other than the scarring, Plaintiff has suffered no long-term effects from the burns he sustained in this incident.
20. Nurse Wainaina admitted she was aware prior to this incident that it was unsafe to touch the radiator while it was running because doing so would result in burns, and she acknowledged that patients should be kept away from the radiator. *Page 6 
21. Dr. Igboekwe's testimony establishes that second degree burns are quite painful. By definition, a second degree burn affects the lower levels of the skin, the dermis.
22. Dr. Igboekwe's testimony further establishes that Plaintiff followed orders from him or the nursing staff on December 13-14, 2004. His testimony also establishes that the treatment nurse on duty is responsible for keeping inmate patients safe, such as keeping them away from hot radiators if they are incapacitated.
23. Plaintiff's actions are free of fault in the incident leading to his second degree burns. Dr. Igboekwe had instructed Plaintiff not to move in bed as doing so might burst his sutures. Plaintiff was practically restrained from moving because of the tubes connected to his legs. His paraplegia and heavy sedation also limited his ability to voluntarily and appropriately respond to the dangerous circumstances created in his location next to the radiator. Plaintiff could not, contrary to Defendant's assertions, go to the bathroom by himself as of December 13-14, 2004. Essentially, Plaintiff was incapacitated on the night in question.
24. Plaintiff has incurred the following deposition costs totaling $1,142.50 in the prosecution of this action; $375.45 to Smart Document Solutions, LLC; $526.50 to Bryant Court Reporting, Inc., and; $240.55 to National Depo.
 ***********
The foregoing Findings of Fact engender the following:
 CONCLUSIONS OF LAW
1. Under the Tort Claims Act, "negligence is determined by the same rules as those applicable to private parties." Bolkhir v.N.C. State Univ., 321 N.C. 706, 709, 365 S.E.2d 898, 900 (1988). *Page 7 
2. Defendant's nursing staff had a duty to use reasonable care to maintain the safety of Plaintiff while he was under their care. Defendant's nursing staff breached their duty by failing to place Plaintiff in a position, or a bed, that would not allow him, in his incapacitated state, to come into contact with the hot radiator. The observance and supervision of Plaintiff by Defendant's nursing staff while he was situated in the hospital bed next to the radiator did not constitute occupational duties involving specialized knowledge or skill. Preventing a paraplegic patient who was hooked up to tubes draining fluid, and who was under the influence of methadone, from lying up next to a hot radiator did not involve matters of medical science. The standards of ordinary negligence, not medical negligence, are applicable in this case and Defendant owed a duty of care to the Plaintiff to prevent foreseeable injury to Plaintiff based upon his inability to ambulate to protect the security of his person. See Taylor v. Vencor,Inc., 136 N.C. App. 528 (2000); Lewis v. Setty,130 N.C. App. 606 (1998); Burns v. Forsyth County Hosp. Authority,Inc., 81 N.C. App. 556, 344 S.E.2d 839 (1986).
3. Defendant's nursing staff breached the applicable duty of care by failing to reasonably ensure that Plaintiff was left in a position where he could not come into contact with the hot radiator. N.C. Gen. Stat. § 143-291.
4. Plaintiff was not contributorily negligent because he was incapacitated and not physically able to prevent himself from coming into contact with the radiator. N.C. Gen. Stat. § 143-291.
5. Based on their knowledge that that the hot radiator posed a hazard and because of their knowledge that Plaintiff was substantially physically incapacitated from protecting himself from danger of that hazard, the failure of Defendant's nurses to take reasonable measures to ensure that Plaintiff did not come into contact with the radiator was a proximate cause of *Page 8 
Plaintiff's injuries. McAtee v. Branning Mfg. Co.,166 N.C. 448, 82 S.E.2d 857 (1914); Shelton v. Steelcase,Inc., ___ N.C. App. ___, 677 S.E.2d 485, reviewdenied, ___ N.C. ___, 682 S.E.2d 389 (2009).
6. Plaintiff sustained damages as an actual and proximate result of Defendant's nursing staff's negligence, to wit: his pain and suffering from second degree burns; the anxiety of not knowing how severe the burns were because of his lack of sensation; his treatment for the burns for about four weeks, and; his significant permanent scarring. Shelton v. Steelcase, Inc.,
7. Plaintiff is entitled to recover monetary damages from Defendant. N.C. Gen. Stat. § 143-291.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, it is therefore:
 ORDERED
1. Plaintiff shall have and recover and Defendant shall pay to Plaintiff the sum of Thirty Thousand Dollars ($30,000.00) as monetary damages.
2. Defendant shall pay the costs of this action. As part of these costs, Defendant shall pay Plaintiff the sum of One Thousand One Hundred and Forty-Two Dollars and Fifty Cents ($1,142.50).
S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING: *Page 9 
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ PAMELA T. YOUNG COMMISSIONER *Page 1